1
2
3
4
5
6
7

8                      **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10

11   DEBRA J. GIGGY,                          **1:12-cv-00673 GSA**

12              Plaintiff,

13       v.

14   CAROLYN W. COLVIN, Commissioner
     of Social Security                       **ORDER REGARDING PLAINTIFF'S**
15                                            **SOCIAL SECURITY COMPLAINT**
              Defendant.
16

17

18

19                          <u>**BACKGROUND**</u>

20
         Plaintiff Debra J. Giggy ("Plaintiff") seeks judicial review of a final decision of the
21

22   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

23   supplemental security income benefits pursuant to Title XVI of the Social Security Act.[1]  The

24   matter is currently before the Court on the parties' briefs, which were submitted, without oral

25

26

27   _____
     [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule
     25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin is substituted for Michael J. Astrue as the
28   defendant in this action.

                                              1

argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

## **FACTS AND PRIOR PROCEEDINGS**[3]

In 2008, Plaintiff filed an application for disability insurance benefits, alleging disability beginning June 23, 2007.  AR 214-221.  Plaintiff's application was denied initially and on reconsideration; Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  AR 87-98.  ALJ William Wallis held a video hearing and issued an order denying benefits on October 21, 2010, finding Plaintiff was not disabled.  AR 16-28.  On March 1, 2012, the Appeals Council denied review.  AR 1-3.

### 1.    **Hearing Testimony on October 4, 2010**

ALJ Wallis held a hearing on October 4, 2010 in Fresno, California.[4]  Plaintiff was represented by attorney Pamela Noblitt.  Plaintiff and her attorney appeared remotely in Bakersfield, California.  Plaintiff and Vocational Expert ("VE") Kenneth Ferra testified.  AR 38-70.

### (a)    *Plaintiff's Testimony*

Plaintiff was twenty-seven years old at the time of the hearing.  AR 44.  She completed high school but did not attend college.  AR 44.  She has five children, ranging in ages from four and a half to ten.  Three of her children live with her, and the other two live with her ex-husband.  AR 51, 58.  Plaintiff lives at her sister's boyfriend's parent's house where she is housesitting.  Plaintiff receives food stamps, cash aid, and Medi-Cal. AR 57.  She has a driver's license and is able to drive.

During 1999 to 2005, Plaintiff worked in the fast food industry.  AR 45.  While she was

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 6 & 7.)
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[4]    ALJ Wallis previously held a hearing on May 5, 2010 in Fresno, California.  AR 34-37.  Plaintiff did not appear for the hearing but later showed cause for her absence.  AR 36, 148-150.  The instant proceeding is the second hearing that was held.

employed, she worked a maximum of twelve hours a week and never worked full time.  AR 45.  She last worked on June 23, 2007.[5]  AR 48.

Plaintiff was not working at the time of the hearing.  AR 49.  She applied for disability benefits after being diagnosed with bipolar disorder.  AR 49-50.  She also suffers from depression, anxiety, fatigue, insomnia, and panic attacks.  AR 50.  She believes she cannot work because she is unable to predict when her depressive episodes, panic attacks, and crying spells will occur. AR 50.

Plaintiff has been in counseling for a number of years.  She is currently being treated by Dr. Gabriela Obrocea.  AR 50.  Plaintiff sees Dr. Obrocea once a week but will transition to once every two weeks based on Dr. Obrocea's recommendation.   AR 52.  Plaintiff believes the visits are very helpful. AR 52.  Dr. Obrocea has prescribed medications including Trazodone, Xanax, Risperdal, Wellbutrin, Topamax, Klonopin and Lamictal.  AR 50-51.  51. Plaintiff does not have any side effects from the medication and believes her situation would be worse if she did not take the medication.  AR 51, 52.

In addition to difficulties with her mood, Plaintiff experiences problems with her memory.  AR 53.  Plaintiff reported she would only be able to remember two of five items at a store if she did not write them down.  AR 53.  She also had a hard time remembering directions at work.  AR 62-63.  For instance, it would take her all day to go through file cabinets which are in numerical order and rearrange them into alphabetical order, and she would only be able to focus for about twenty minutes at a time.  AR 54.  Plaintiff also has a hard time keeping a regular schedule. AR 63.  When she was working, she was constantly late or had to leave early.  AR 63.  Since Plaintiff gets tired often, she also needs to lie down or nap for one-and-a-half to two hours during a regular

---

[5]  In 2008, Plaintiff tried to return to work again and earned less than $100.  AR 49.

3

work shift and she would miss an average of three out of the five work days.  AR 54-57.

At home, Plaintiff isolates herself from others because she has a difficult time dealing with people.  AR 55.  She also gets uncomfortable in crowds of eight or more people, even if they are family members.  AR 55-56.  Plaintiff also feels uncomfortable going to the grocery store.  AR 56.  When Plaintiff's sister brings four friends over, Plaintiff starts to feel claustrophobic.  AR 56.  In an average week, Plaintiff has one or two panic attacks that last five to seven minutes.  AR 56.  Most of her panic attacks occur when she is driving, or is a passenger in a car, since she has been in two automobile accidents.  AR 56.  Plaintiff was most recently hospitalized for slitting her wrists and having a really bad panic attack.  AR 63.  This was the first time this happened and Plaintiff said she was not trying to commit suicide but only wanted to hurt herself.  AR 63.

Plaintiff does not have any problem taking care of herself, such as showering and washing her hair.  AR 58.  However, she stated that she does not feel like taking care of herself two to three days out of a week.  AR 59.  Plaintiff cooks, but does less cooking than she used to.  AR 59.  Plaintiff is able to sleep through the night since she has been taking medication and gets about six to seven hours of sleep at a time.  AR 59.

During a typical day, Plaintiff indicated that she takes her children to school.  AR 60.  While her daughter is at school, Plaintiff stated she lies around the house and does not do anything.  AR 60.  After her daughter returns from school, sometime after 11:30 a.m., Plaintiff's daughter plays Wii sports while Plaintiff lies down.  AR 60.  When Plaintiff's other children get home, they all go to Plaintiff's parent's house, so her parents can help watch the kids.  AR 60.  When the ALJ questioned Plaintiff regarding various activities she does while at home, Plaintiff responded that she does not play Wii, she does not talk on the phone, has no visitors, and does not read.  AR 60.  She keeps the television on but does not pay attention to it.  AR 53.   Plaintiff's children read their books to her.  AR 60.

Plaintiff does the laundry, goes to the grocery store with her father, vacuums sometimes, sweeps, dusts, and uses the dishwasher to wash the dishes.  AR 60-61.  Plaintiff does not participate in any hobbies or activities.  AR 61.  She has a computer but does not use it.  AR 61.  Due to Plaintiff's condition, she has had to give up walking regularly, taking her kids to the park, and spending time with family and friends.  AR 61-62.  Plaintiff just started attending the Seventh Day Adventist Church but has only gone approximately three times.  AR 62.

### (b)    *VE Kenneth Ferra's Testimony*

VE Ferra described Plaintiff's past relevant work as a fast food worker, unskilled at a light level; and cashier, with a SVP of three, semi-skilled at a light level.  AR 65.

The ALJ asked the VE to assume a hypothetical person of the same age, education, language, and work background as the Plaintiff, with  the ability to understand, remember, and carry out simple and complex instructions, interact appropriately with co-workers, supervisors, and the general public, but who could only attend and concentrate sufficiently for two-hour periods.  AR 65.  The VE indicated that such an individual could perform Plaintiff's past relevant work, as well as jobs which are unskilled at a light level including a cleaner, cashier II, and packing line worker.  AR 66.

In a second hypothetical question posed by the ALJ, the VE was asked to consider the same hypothetical individual, with the ability to understand, remember, and carry out simple, repetitive tasks, occasionally interact with the general public, and frequently interact with co-workers or supervisors.  AR 66.  The VE indicated that this individual could not work as a cashier but could still work as a cleaner, a packing line worker, as well as a sorter.  AR 67.

In the third hypothetical question posed by the ALJ, the VE was asked to consider the same individual from question two, who could only attend and concentrate for less than two hours at a time and would be absent from work more than three days a month.  AR 67.  The VE testified

that such an individual could not perform any work.  AR 67.

**3.**   **Medical Record**

The entire medical record was reviewed by the Court.  AR 280-448.  Plaintiff received treatment at the Kern County Mental Health facility from April 23, 2009 to August 3, 2010 by Dr. Obrocea, Dr. Dennis, and Dr. Sun.  AR 333-448.  Dr. Dennis treated Plaintiff from May 7, 2009 to June 24, 2010; Dr. Sun treated her from July 6, 2010 to September 7, 2010; and Dr. Obrocea completed a Psychiatric/Psychological Impairment Questionnaire for Plaintiff.  AR 333-448.  Dr. Zhang completed a Psychological Evaluation as a consultative examiner.  AR 310. Dr. Nasra Haroun and Dr. Luyen Luu were non-examining physicians.  The relevant sections of the reports are outlined below :

**(a)**   ***Dr. Tshekedi Dennis***

On April 23, 2009, Dr. Tshekedi Dennis, PhD, completed an intake form and noted that Plaintiff's thought process was linear and goal directed; attention, concentration, and judgment were good; reliability and insight were fair; and memory was grossly intact.  AR 434.  He diagnosed Plaintiff with major depressive disorder and polysubstance abuse but ruled out bipolar disorder.  AR 434.  Dr. Dennis opined that Plaintiff only had mild limitations regarding independent living and physical care, and moderate limitations regarding social relationships and vocation/education.  AR 434.  On May 21, 2009, Dr. Dennis changed Plaintiff's diagnosis to bipolar disorder II.  AR 425.  On numerous progress notes from May 7, 2009 to June 24, 2010, Dr. Dennis opined that Plaintiff's grooming was neat; speech was normal; eye contact was good; behavior was cooperative; mood was euthymic; psychomotor skills, thought process, and thought content were unremarkable; insight, judgment, and memory were good or fair; and attention/concentration and orientation were intact.  AR 385-429.  In addition, in sixteen of nineteen visits, Dr. Dennis indicated that Plaintiff's current disability was severe and Plaintiff was

unable to work.  AR 385-429.  However, on the other three visits, Dr. Dennis opined that Plaintiff's current disability was moderate and she was able to work part-time with support.  AR 395, 401, 428.

**(b)** *Dr. Alfred Sun*

Dr. Alfred Sun, M.D. saw Plaintiff on six occasions from July 6, 2010 to September 7, 2010.  On the majority of those visits, Dr. Sun noted that Plaintiff's grooming was neat; speech was normal; eye contact was good; behavior was cooperative; psychomotor skills, thought process, and thought content is unremarkable; insight, memory, and judgment were fair; and attention/concentration and orientation were intact.  AR 371-386.  During these visits, Dr. Sun noted that Plaintiff's disability was severe and she was unable to work.  AR 371-386.

Throughout all visits at Kern County Mental Health facility (both with Dr. Sun and Dr. Dennis), Plaintiff showed little or no side effects from her medication and an absence of hallucinations, paranoia, or suicidal ideations.  AR 371-429.  Overall, the progress reports were unremarkable except for some signs of sadness, tearfulness, and anxiety.  AR 371-429.

**(c)** *Dr. Gabriella Obrocea*

On September 28, 2010, Dr. Gabriella Obrocea, M.D., PhD, Plaintiff's treating physician, completed a Psychiatric/Psychological Impairment Questionnaire diagnosing Plaintiff with bipolar II disorder, with a current Global Assessment Functioning ("GAF") of 40, with a high of 45 over the past year.  AR 349.  Dr. Obrocea indicated the prognosis was "guarded."  AR 349. Dr. Obrocea diagnosed Plaintiff with poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, delusions or hallucinations, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, decreased energy, manic syndrome, and

hostility and irritability.  AR 350.  Dr. Obrocea also indicated that Plaintiff required

hospitalization or emergency room treatment once a year.  AR 351.

Dr. Obrocea opined that Plaintiff is markedly limited in the ability to remember locations

and work-like procedures, understand and remember detailed instructions, carry out detailed

instructions, maintain attention and concentration for extended periods, perform activities within

a schedule, maintain regular attendance, be punctual within customary tolerance, work in

coordination with or proximity to others without being distracted by them, make simple work

related decisions, complete a normal workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods, interact appropriately with the general public, get along with co-workers or peers without

distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and to

adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the

work setting, and travel to unfamiliar places or use public transportation.  AR 352-354.  Plaintiff

showed moderate limitations regarding the ability to sustain ordinary routine without supervision,

accept instructions and respond appropriately to criticism from supervisors, be aware of normal

hazards and take appropriate precautions, and set realistic goals or make plans independently.

AR 352-354.  Dr. Obrocea opined that Plaintiff is mildly limited regarding the ability to

understand and remember one or two step instructions, carry out simple one or two step

instructions, and ask simple questions or request assistance.  AR 352-354.

Dr. Obrocea noted that Plaintiff's impairments are ongoing and will last at least twelve

months.  AR 355.  She opined that Plaintiff is not a malingerer and does not have a low IQ or

reduced intellectual functioning.  AR 355.  Dr. Obrocea opined that Plaintiff is incapable of

tolerating work with "low stress" but failed to explain the basis for her conclusions.  AR 355.

Plaintiff's impairments are likely to produce "good days" and "bad days" that will result in

Plaintiff being absent from work more than three times a week.  AR 355-356.

      **(d)**     ***Dr. John Zhang***

      On August 20, 2008, as a consultive examiner, Dr. John Zhang examined Plaintiff and completed a Psychological Evaluation.  AR 309-312.   Plaintiff told Dr. Zhang she normally wakes up at six in the morning gets her children ready for school, and goes back to bed for a few hours.  AR 310.  After she wakes up, she spends the rest of her day doing housekeeping chores and watching television.  AR 310.  She has a few friends and spends time socializing mostly with her family.  AR 310.  Plaintiff usually goes to bed around ten in the evening and sleeps adequately with her medication.  AR 310.

      Dr. Zhang stated Plaintiff demonstrated an average level of cognitive functioning with adequate memory and attention.  AR 311.  He opined that Plaintiff's fund of general information is below-average.  AR 311.  Dr. Zhang noted that Plaintiff is able to interact appropriately and provided sufficient background information for the evaluation.  AR 311.  He indicated that Plaintiff was alert and orientated in all spheres, did not report any hallucinations, did not appear to be delusional, and showed no signs of a thought disorder.  AR 311.  Dr. Zhang also indicated that Plaintiff's judgment appeared to be fair and she demonstrated limited capacity for insight.  AR 311.

      Dr. Zhang diagnosed Plaintiff with mood disorder, not otherwise specified.  AR 311.  He noted that Plaintiff demonstrated a number of mood disturbances, but her prescribed psychotropic medication provided some positive result.  AR 311.  Dr. Zhang opined that Plaintiff is likely to have some level of difficulty sustaining adequate concentration, persistence, and pace in common work and social settings; her capacity to interact appropriately with the public, supervisors, and coworkers may be compromised at times; and her ability to understand, remember, and carry out simple and complex instructions appeared to be intact.  AR 311.

(e)      *Dr. Nasra Haroun and Dr. Luyen Luu*

On September 3, 2008, Dr. Nasra Haroun, M.D., a state agency non-examining physician, completed a Psychiatric Review Technique form.  AR 313-323.  Dr. Haroun opined that Plaintiff's impairments are not severe.  AR 313.  She indicated that Plaintiff has a mood disorder, not otherwise specified, that does not satisfy the diagnostic criteria of an affective disorder.  AR 316.  Dr. Haroun also found Plaintiff has a medically determinable impairment of methamphetamine dependence in alleged remission but the condition does not satisfy the diagnostic criteria of a substance addiction disorder.  AR 319.

Dr. Horoun opined that Plaintiff is not restricted from activities of daily living and does not have repeated episodes of decompensation.  AR 321.  Specifically, the doctor reported that Plaintiff is able to care for her five children and her personal needs, and that Plaintiff is able to do household chores, watch television, drive a car, and go places by herself.  AR 323.  However, Dr. Haroun identified mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and has limited insight.  AR 321.  She noted that Plaintiff wass mildly depressed with an anxious mood and affect, but she had an average level of cognition with adequate memory and possesses fair judgment.  AR 323, 325.  Dr. Haroun also noted that Plaintiff's fund of knowledge was below average.  AR 323.  Dr. Haroun opined that Plaintiff could complete simple and complex instructions and could manage her own funds.  AR 325.

On February 2, 2009, Dr. Luyen Luu, M.D., a state agency non-examining physician, completed a case analysis.  AR 331-332.  Dr. Luu indicated that Plaintiff demonstrated an average level of cognitive functioning with adequate memory and attention.  AR 331.  She also indicated that Plaintiff's fund of information was below average.  AR 331.  In addition, Dr. Luu noted that Plaintiff's judgment appeared fair and insight was limited.  AR 331.  Dr. Luu opined that Plaintiff can complete simple and complex instructions and can manager her own funds.  AR

331.

### 4.  **The Disability Determination Standard and Process**

To qualify for benefits under the Social Security Act, Plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. § 404.1520(a)-(f).  The ALJ proceeds step by step in order and stops upon reaching a dispositive finding that the claimant is disabled or not disabled.  20 C.F.R. § 404.1520(a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 416.927, 416.929.

The ALJ is required to determine (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[6] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. 404, Subpart P, Appendix 1; (4) whether the claimant retained the RFC to perform his past relevant work;[7] and (5) whether the

---

[6] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).

[7] Residual functional capacity captures what a claimant "can still do despite [his] limitations."  20 C.F.R. § 404.1545.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the

11

claimant had the ability to perform other jobs existing in significant numbers at the regional and national level.  20 C.F.R. § 404.1520(a)-(f).

**5.     Summary of the ALJ's Findings and Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 19-28.  More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 29, 2008. AR 21.  Further, the ALJ identified bipolar disorder and anxiety as severe impairments.  AR 21. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 21-22.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, that she can understand, remember, and carry out simple and complex instructions; can interact appropriately with coworkers, supervisors, and the general public; but can only attend and concentrate sufficiently for two-hour periods.  AR 23-26.  After applying the Medical-Vocational Rules, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grids"), the ALJ determined that there are a significant number of jobs in the national economy that the claimant can perform and consequently Plaintiff did not meet the disability standard.[8]  AR 26-27.

Here, Plaintiff argues that the ALJ erred by (1) rejecting Dr. Dennis, Dr. Sun, and Dr. Obrocea's opinions, (2) ignoring the limitations regarding concentration, persistence, and pace, as well as the social limitations assessed by consultative psychologist examiner Dr. John Zhang, and (3) finding Plaintiff not credible.  (See Docs. 13 & 15).

///

---

ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

[8] Since Plaintiff was born on August 25, 1982 and was 25 years old at the time of her application, Plaintiff is defined as a younger individual aged 18-44 and application of the grids was appropriate.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

 "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).   It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**DISCUSSION**

1.       **The ALJ Properly Discounted the Opinions of Dr. Dennis, Dr. Sun, and Dr. Obrocea**

Plaintiff contends the ALJ erred in failing to adopt the opinions of Dr. Dennis, Dr. Sun, and Dr. Obrocea.  (Doc. 13 at 8-12.)  The Commissioner contends, however, that the ALJ considered all of the medical evidence and properly rejected the treating physician opinions. (Doc. 14 at 9-12.)

(a)      ***The Legal Standards***

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  When the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th

13

Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject this opinion without providing "specific and legitimate reasons"

supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499,

502 (9th Cir. 1983).

The opinion of a non-examining physician cannot, by itself, constitute substantial

evidence that justifies the rejection of the opinion of either an examining physician or a treating

physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d

1456 (9th Cir. 1984).  In some cases, however, the ALJ can reject the opinion of a treating or

examining physician, based in part on the testimony of a non-examining medical advisor.  *E.g.,*

*Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035,

1043 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example, in

*Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the

ALJ did not rely on [the non-examining physician's] testimony alone to reject the opinions of

Magallanes's treating physicians . . . ."  *Magallanes*, 881 F.2d at 752.  Rather, there was an

abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test

results, contrary reports from examining physicians, and testimony from the claimant that

conflicted with her treating physician's opinion.  *Id.* at 751-52.

If a treating physician's opinion is not given controlling weight because it is not well

supported or because it is inconsistent with other substantial evidence in the record, the ALJ is

instructed to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight

to accord the opinion of the treating physician.  C.F.R. § 404.1527(d)(2).  Those factors include

the "[l]ength of the treatment relationship and the frequency of examination" by the treating

physician and the "nature and extent of the treatment relationship" between the patient and the

treating physician.  20 C.F.R. § 404.1527(d)(2)(i)-(ii).  Other factors include the supportability of

14

the opinion, consistency with the record as a whole, specialization of the physician, and extent to which the physician is familiar with disability programs and evidentiary requirements.  20 C.F.R. § 404.1527(d)(3)-(6).

        **(b)**     ***The ALJ's Findings***

In reviewing the medical evidence and rejecting Dr. Obrocea's opinion the ALJ stated the following :

> Dr. Obroc[e]a's report appears to contain inconsistencies when compared to the treating notes from Kern County Mental Health, and the doctor's opinion is accordingly rendered less persuasive. For example, a psychiatric progress note dated September 7, 2010, reveals that the claimant has experienced less anger, has no side effects from medications, and although her mood is "irritable" her behavior was cooperative, her affect was appropriate, her thought process was unremarkable, her insight, memory, and judgment were rated as fair, and her attention/concentration were noted to be intact. Her sleep and appetite were noted to be "ok" as well.  On August 24, 2010, the claimant reported she "has been angry and depressed with no energy" over the past weekend but had had a "good week." During this examination her affect was appropriate, her thought process was unremarkable, her insight, memory, and judgment were rated as fair, and her attention/concentration were noted to be intact. The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.  It was noted that her medications are helping to decrease her anger and mood swings on September 7, 2010.  The rest of the records are consistent in reporting that the claimant's affect was appropriate, her thought process was unremarkable, her insight, memory, and judgment were rated as fair, and her attention/concentration were intact.  In addition, when documenting the claimant's progress towards recovery it was noted that "the individual has an inner strength and has handled her separation and the care of her children even though at times she becomes overwhelmed . . . .  The individual is tenacious and continues to keep busy doing what is needed despite the barriers she encounters."  The opinion of Dr. Obroc[e]a is given little weight, as it is inconsistent with her own treatment records and the record as a whole, as discussed above.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of 'not disabled.'  Although those physicians were non-examining, and therefore their opinions do not

15

as a general matter deserve as much weight as those examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision).

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

In sum, the above residual functional capacity assessment is supported by statements regarding the claimant's daily activities, and the consultative assessment of Dr. Zhang.

AR 24-26, internal citations omitted.

**(c)**    *Analysis*

Plaintiff argues that ALJ did not provide specific and legitimate reasons for rejecting Dr. Obrecea's opinion. Moreover, Plaintiff contends that that the ALJ did not consider Dr. Sun or Dr. Dennis' opinion which constitutes reversible error. The Court disagrees. As part the evaluation of the medical evidence, the ALJ gave a detailed summary of the medical records and outlined the bases for his conclusions.

First, contrary to Plaintiff's assertions, the ALJ considered Dr. Dennis and Dr. Sun's treatment notes. In fact, he rejected Dr. Obrocea's opinion because Dr. Obrocea's report was inconsistent with those doctors' notes from Kern County Mental Health. AR 24-25. Specifically, the ALJ stated that Plaintiff sought treatment from Kern County Mental Health since April 23, 2009, where Plaintiff was evaluated and treated by Dr. Dennis. AR 24, 434-437. Also, the ALJ referred to the two most recent treatment notes on September 7, 2010 and August 14, 2010, which were completed by Dr. Sun who was seeing Plaintiff on a regular basis. AR 24, 371, 374-375, 377. In fact, within these most recent treatment notes, Dr. Sun noted generally unremarkable findings including that Plaintiff's medications were relatively effective in controlling Plaintiff's symptoms. AR 371, 374-375, 377. On September 7, 2010, Dr. Sun also noted that Plaintiff's medications had helped decrease Plaintiff's anger and mood swings. AR 375.

Although Plaintiff argues the ALJ's interpretation of these notes was selective and not accurate, a careful review of the Kern County Mental Health medical records reveals that the ALJ's findings are supported by substantial evidence.  AR 280-448. For example, Dr. Obrocea noted that Plaintiff's memory was poor, but numerous treatment notes completed by Dr. Dennis and Dr. Sun indicated that Plaintiff's memory was good or fair.  AR 24, 350-351, 371, 374, 376, 378, 380, 382, 385, 387, 389, 392, 394, 396, 398, 400, 402, 404,406, 410, 412,415, 418, 420, 423, 426, 429.  Also, Dr. Obrocea opined that Plaintiff had a difficult time thinking or concentrating; however, Dr. Dennis and Dr. Sun both opined that Plaintiff's attention/concentration was intact. *Id*.  Significantly, Dr. Obrocea indicated that Plaintiff had delusions or hallucinations and suicidal thoughts, but Dr. Dennis and Dr. Sun both noted on several occasions that Plaintiff was not paranoid, and did not have hallucinations or suicidal thoughts. *Id*.  Dr. Dennis and Dr. Sun even noted that Plaintiff's thought processes and thought content were unremarkable. *Id*.  The incongruity between a treating physician's opinion and other evidence in the record is a proper basis for discounting a treating physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Furthermore, the Court is not persuaded by Plaintiff's argument that she is disabled because Dr. Sun and Dr. Dennis opined that Plaintiff was unable to work on several occasions. These conclusions were not formulated in the course of a disability evaluation but were boxes that were checked as part of a routine office visit. An ALJ may properly discount a brief and conclusory form opinion which is not supported by clinical findings. *Magallanes*, 881 F.2d at 751.

When evaluating the medical evidence, the ALJ gave greater weight to the consultative examining and non-examining physicians' opinions.  AR 26.  Dr. Zhang, Dr. Haroun, and Dr. Luu found that Plaintiff demonstrated an average level of cognitive functioning with adequate

memory and attention.  AR 311, 323, 331.  In addition, all three doctors noted that Plaintiff's

judgment appeared to be fair.  AR 311, 325, 331.  Both Dr. Haroun and Luu opined that Plaintiff

can complete simple and complex instructions, while Dr. Zhang opined that Plaintiff's ability to

understand, remember, and carry out simple and complex instructions appeared to be intact.  AR

311, 325, 331.   The ALJ's reliance on these consultative and non-examining physician's

opinions constitute substantial evidence supporting the ALJ's RFC determination. *Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes

substantial evidence because it rests on independent examination); *see Thomas v. Barnhart*, 278

F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may

also serve as substantial evidence when the opinions are consistent with independent clinical

findings or other evidence in the record."); *see also* 20 C.F.R. § 404.1527(d)(3) (varying the

weight given to non-examining source opinions "depend[ing] on the degree to which they provide

supporting explanations for their opinions").

In conclusion, this Court finds that the treatment notes and reports from Kern County

Mental Health, which includes opinions from Dr. Dennis, Dr. Sun, and Dr. Obrocea, are

internally inconsistent.  Therefore, ALJ Wallis' assessment of the medical evidence is supported

by substantial evidence.

> **2.      The ALJ Properly Discounted Dr. Zhang's Opinion Regarding Plaintiff's**
> **Concentration, Persistence, and Pace**

Plaintiff argues the ALJ erred by failing to incorporate Dr. Zhang's limitations in

concentration, persistence, pace and social functioning into the RFC.  (Doc. 13 at 12-13.)  In

reply, the Commissioner asserts that the ALJ's RFC determination is supported by substantial

evidence.  (Doc. 14 at 12-14.)

///

///

1

(a)   *The Legal Standards*

2

A RFC evaluates an individual's ability to do sustained work-related physical and mental

3

activities in a work setting on a regular and continuing basis of eight hours a day, for five days a

4

week, or an equivalent work schedule.  Social Security Ruling ("SSR") 96-8p.  The RFC

5

assessment considers only functional limitations and restrictions which result from an individual's

6

medically determinable impairment or combination of impairments.  SSR 96-8p.  "In

7

determining a claimant's RFC, an ALJ must consider all relevant evidence in the record

8

including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain,

9

that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Social Sec'y*

10

*Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

11

(b)   *Analysis*

12

In formulating the RFC, the ALJ concluded that Plaintiff is capable of  performing a full

13

range of work at all exertional levels and that she could understand, remember, and carry out

14

simple and complex instructions; interact appropriately with coworkers, supervisors, and the

15

general public; and could attend and concentrate sufficiently for two-hour periods.  AR 23-26.  In

16

doing so, the ALJ relied on Dr. Zhang's psychological examination.  AR 309-312.

17

Plaintiff argues that although the ALJ gave great weight to Dr. Zhang's opinion, he failed

18

to incorporate all of Dr. Zhang's limitations into the RFC.  In particular, Dr. Zhang noted that

19

"Plaintiff would have some level of difficulty sustaining adequate concentration, persistence, and

20

pace in common work and social settings." AR 311.  Plaintiff contends that the ALJ's RFC which

21

limits Plaintiff's attention and concentration to two hour periods does not incorporate the Dr.

22

Zhang's restriction.  The Court disagrees.

23

When determining whether Plaintiff had a listed impairment, the ALJ explicitly

24

acknowledged Dr. Zhang's opinion regarding Plaintiff's moderate difficulties with concentration,

25

26

27

28

persistence, and pace.  AR 22, 311.  Although Plaintiff does not agree that limiting Plaintiff's concentration to two hour periods addresses Dr. Zhang's limitation, there is substantial evidence in the record to support the ALJ's interpretation.  In reaching this conclusion, the ALJ noted that Plaintiff is able to successfully engage in daily activities, such as taking care of her five children, cleaning the house, doing laundry, and shopping.  AR 26, 310.  In addition, the ALJ's RFC findings are consistent with Dr. Haroun and Dr. Luu's opinions.  AR 23, 313-325, 331-332.  Specifically, Dr. Haroun noted Plaintiff does not have any restrictions with daily living activities and does not have repeated episodes of decompensation.  AR 321.  She also noted that Plaintiff only has mild difficulties in maintaining social functioning and concentration, persistence, or pace.  AR 321.  Relatedly, Dr. Luu opined that Plaintiff demonstrates an average level of cognitive functioning with adequate memory retention and her judgment appears fair.  AR 331.  Dr. Luu also indicated Plaintiff can follow simple and complex instructions and her cognitive function is average.  AR 331.  The ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions.  *Magallanes*, 881 F.2d at 753-54.  Here, the ALJ gave weight to all three reports and fashioned a limitation incorporating all of those opinions.

The Court is similarly not persuaded by Plaintiff's argument that the case should be remanded because the ALJ completely ignores Dr. Zhang's limitation that Ms. Giggy's "capacity to interact appropriately with the public, supervisors, and co-workers may be compromised at times"  AR 311. Plaintiff's position that Dr. Zhang's opinion that Plaintiff's ability to deal with others in a work setting *may* be compromised *at times*, requires a limitation in his RFC assessment is tenuous at best.  Furthermore, even *assuming arguendo* that the ALJ should have included such a limitation, any error is harmless. When formulating the second hypothetical posed to the VE, the ALJ imposed a limitation of occasional interaction with the general public

and frequent interaction with coworkers and supervisors.  AR 66.  The VE indicated that Plaintiff would still be able to work as a cleaner, a packing line worker, and a sorter.  Accordingly, jobs are still available and Plaintiff would not be considered disabled under the Social Security Act. *Molina v. Astrue*, 674 F. 3d 1104 (9th Cir. 2012) *citing Carmickle v. Comm'r Soc. Sec. Admin.*, 553 F. 3d 1155, 1162-1163 (9th Cir. 2008) (An ALJ's error is harmless where it is "inconsequential to the ultimate disability determination."); *see also*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F. 3d 1050, 1056 (9th Cir. 2006) (the "reviewing court … can confidently conclude that no reasonable ALJ … could have reached a different disability determination.").  Therefore, the ALJ appropriately reviewed the entire medical record and the ALJ's findings regarding Plaintiff's RFC are supported by substantial evidence and are free of legal error.

### 3.      The ALJ's Findings Regarding Plaintiff's Credibility are Proper

Plaintiff contends ALJ Wallis failed to provide clear and convincing reasons for rejecting her testimony.  (Doc. 13 at 13-15.)  In reply, the Commissioner asserts that the ALJ's credibility findings are supported by substantial evidence.  (Doc. 14 at 14-15.)

#### (a)      *The Legal Standards*

A two step analysis applies at the administrative level when considering a claimant's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id.* at 1281-82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so.  *Id.* at 1281.  The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible."  *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why

21

Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").

An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v. Soc. Sec'y Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, a failure to follow a prescribed course of treatment, the claimant's daily activities, the claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).  "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment."  *Orn*, 495 F.3d at 635. (citation omitted).

### (b)    *Analysis*

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that Plaintiff had the severe impairments of bipolar disorder and anxiety.  AR 21.  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  AR 23-24.  This finding satisfied step one of the credibility analysis.  *Smolen*, 80 F.3d at 1281-82.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide

clear and convincing reasons for rejecting Plaintiff's testimony.  *Smolen*, 80 F.3d at 1283-84;

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended).  When there is evidence of an

underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the

severity of his symptoms solely because they are unsupported by medical evidence.  *Bunnell v.*

*Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, it is not sufficient for the ALJ

to make general findings; he must state which testimony is not credible and what evidence in the

record leads to that conclusion.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*,

947 F.2d at 345-46.

Here, after noting the inconsistencies in the medical evidence outlined in the previous

section, ALJ Wallis also made the additional credibility findings:

> The claimant's testimony regarding her daily activities is contradicted by
> her own statements in the record.  Specifically, she testified that her activities of
> daily living are so restricted as to prevent her from watching television, reading,
> using the computer, talking on the telephone, or listening to the radio.  She
> testified that once she gets her children off to school she basically lies around all
> day and does nothing.  On the contrary, she reports in the record, and to the
> consultative examiner that she takes care of five children, bathing, feeding, and
> dressing them for school, she cleans house, does laundry, waters the grass, drives,
> and shops for food, clothes and household necessities.  She also stated that she
> reads, watches television, walks, watches movies, talks on the phone daily and
> uses a webcam on the computer to communicate with friends.  The claimant has
> described daily activities that are not limited to the extent one would expect, given
> the complaints of disabling symptoms and limitations.  The claimant is also
> apparently able to care for young children at home, which can be quite demanding
> both physically and emotionally, without any particular assistance.  These
> discrepancies diminish the persuasiveness of the claimant's subjective complaints
> and alleged limitations.  In addition, a 3rd party report from Teresa Sharp indicates
> that the claimant is able to make breakfast, take care of five children, making them
> lunch and giving them baths.  Ms. Sharp indicates that the claimant makes dinner,
> cleans the house, washes dishes, does laundry, hangs clothes, shops for food,
> reads, watches television, play with her children, talks on the phone, uses the
> computer, and goes to the post office, store and park.
> In sum, the above residual functional capacity assessment is supported by
> statements regarding the claimant's daily activities, and the consultative
> assessment of Dr. Zhang.  Moreover, the medical evidence does not support the
> severity of the alleged symptoms and limitations, but rather supports the residual
> functional capacity I set forth above.

AR 25-26, internal citations omitted.

Contrary to Plaintiff's assertions, the ALJ provided clear and convincing reasons that are supported by the record when concluding Plaintiff's subjective symptom testimony was not credible.  ALJ Wallis found that Plaintiff's testimony regarding her daily activities contradicted her own statements, which in return diminished the persuasiveness of the Plaintiff's subjective complaints and alleged limitations.  AR 25-26.  The inconsistencies noted by the ALJ  are supported by the record. AR 26, 36-64, 231-239, 251, 310, 247-250. *Bray v. Commissioner,* 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *see also* 20 C.F.R. § 404.1529 (an ALJ may consider claimant's ability to work in assessing claimant's credibility).  These reasons coupled with the ALJ's reliance on the objective medical records outlined in the previous section constitutes substantial evidence.

Here, the ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints.  *Lester*, 81 F.3d at 834.  If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Accordingly, because the ALJ did not arbitrarily discredit Plaintiff's testimony, his findings are supported by substantial evidence and are free of legal error.

///

///

///

///

///

///

24

1

## CONCLUSION

2

3
　　　Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

4
evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

5
DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

6
Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn

7
W. Colvin, Commissioner of Social Security and against Plaintiff Debra J. Giggy.

8

9

10
IT IS SO ORDERED.

11
　　Dated:   **August 12, 2013**　　　　　　　　　　**/s/ Gary S. Austin**

12
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28